IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

TERRON PERRY,

          Defendant.

HONORABLE JEROME B. SIMANDLE

Criminal Action
No. 14-479 (JBS)

**OPINION**

APPEARANCES:

Nelson Thayer, Deputy U.S. Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street
P.O. Box 2098
Camden, N.J. 08101

Ralph A. Jacobs, Esq.
JACOBS, SINGER, KIVITZ & HERMAN LLC
34 Tanner Street
Haddonfield, N.J. 08033
     Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

       This motion to suppress evidence presents the question
whether this federal court is bound by the decision of a judge
of the Superior Court of New Jersey granting the defendant's
motion to suppress a handgun found concealed in his vehicle
after a warrantless search on December 22, 2012.  The Superior
Court found that the warrantless search and seizure of the
vehicle was unlawful under the automobile exception under New
Jersey law because exigent circumstances were not present,

pursuant to <u>State v. Pena-Flores</u>, 108 N.J. 6, 28 (2009).  The federal automobile exception, on the other hand, requires a lawful stop of the vehicle and probable cause to believe that evidence of a crime may be found in the vehicle, both as found by the Superior Court, but federal law does not require proof of exigent circumstances to permit a valid automobile search.  For the reasons now discussed, the Court holds that the United States is not bound by the Superior Court's suppression decision under the circumstances of this case, as it is a separate sovereign, not in privity with the state prosecutor in the Superior Court case, and thus not within the <u>Bartkus</u> exception to the dual sovereignty doctrine recognized in <u>Bartkus v. Illinois</u>, 359 U.S. 121 (1959) and its progeny.  On the merits, the Court holds that this warrantless search was within the federal automobile exception and that the motion to suppress evidence seized from the vehicle should be denied.

## II.  FACTUAL BACKGROUND

On August 13, 2014, the Grand Jury sitting in Camden, New Jersey returned a one Count Indictment, charging Defendant Terron Perry (hereinafter, "Defendant") with felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1) on June 7, 2012.  The charge specifically emanates from a June 7, 2012 encounter at an Auto Zone store in Camden, at which time Defendant allegedly fired multiple shots at another individual.

A police officer, advised of the gunshots, observed three males fleeing the scene in a dark Chevrolet Impala, and thereafter placed the three individuals, including Defendant, in handcuffs. The officer proceeded to conduct a search of the Impala, with the individuals' consent, but recovered no firearms, contraband, or any other evidence of a crime. A later inspection of the Auto Zone's store front and abutting structure, however, resulted in the recovery of .410 gauge shotgun shells and .45 caliber rounds.

In the pending motion, Defendant moves to suppress evidence obtained in connection with an unrelated search of the same Impala driven by Defendant Terron Perry on December 22, 2012. [Docket Item 25.] In the early morning of December 22, 2012, Officer Evette Truitt (hereinafter, "Officer Truitt") heard multiple gunshots while on patrol in Camden.[1] Officer Truitt then observed the dark Impala driving recklessly, and nearly striking her patrol car as it drove away from the area of the gun shots at high speeds. As a result of the Impala's tinted windows and high-speed driving, Officer Truitt pursued the Impala—momentarily losing sight of it—for the purposes of

---

[1] At the suppression hearing herein, the Court received transcripts of testimony taken before the Hon. Michele M. Fox in the Superior Court of New Jersey in State v. Terron Perry and Assan Perry, Ind. No. 1129-04-13 on March 14, 2014. No further testimony was presented by either party before the undersigned on December 10, 2014. The facts found herein pertain to the testimony adduced in State Court on March 14, 2014.

conducting a traffic stop. In light of the circumstances, Officer Truitt informed others of the incident by radio, prompting Officer Raul Beltran (hereinafter, "Officer Beltran"), among others, to converge upon the location of the ultimate stop. Upon locating the Impala, Officer Truitt conducted a traffic stop and, along with Officer Beltran, detained Defendant and Assan Perry, the Impala's two occupants. Subsequent to the individuals' detention, Officer Beltran conducted a sweep of the passenger compartment of the Impala, during which he discovered a hidden compartment adjacent to the steering column. Inside of the hidden compartment, Officer Beltran recovered a Ruger P345 .45 caliber semi-automatic handgun, a handgun of a type consistent with the .45 caliber rounds located after the June 7, 2012 shooting.

The Government now seeks to introduce the evidence derived from the December 22, 2012 search, namely, the hidden compartment containing a handgun, in order to answer the "inevitable question" concerning why the June 7, 2012 search of the Impala resulted in the recovery of no weapons. (Gov't's Br. at 4.) The Government specifically argues that the evidence obtained in the December 22, 2012 search "directly prove[s]" the charged offense to the extent that it creates the inference that, on June 7, 2012, Defendant did indeed possess a firearm,

but that he had "secreted it" in the hidden compartment in the Impala. (Id.)

Defendant, however, insists that the introduction of such evidence must be suppressed because this federal prosecution, principally reliant upon evidence of the search, constitutes an impermissible second litigation of the same issue following a state court decision suppressing its introduction. (Def.'s Br. at 3-4.) In the alternative, and in addition, Defendant asserts that the evidence obtained in the December 22, 2012 search must be suppressed because such search constituted an unlawful warrantless search. (Def.'s Br. at 3-4.)

The principal issues before the Court are whether this federal prosecution contravenes a sparsely-developed exception to the dual sovereignty doctrine; and, if not, whether Officer Beltran conducted a lawful, warrantless search of the Impala on December 22, 2012.

For the reasons explained below, the Court finds the December 22, 2012 search lawful under the automobile exception to the warrant requirement of the Fourth Amendment. Defendants' motion will, accordingly, be denied.[2]

---

[2] The Court conducted oral argument on the pending motion on December 10, 2014.

## III. PROCEDURAL HISTORY

Because the pending motion concerns in part the posture of the parallel state prosecution, the Court will set forth certain salient procedural circumstances of the related state court proceeding.

On March 26, 2013, a state grand jury returned an Indictment charging Defendant and Assan Perry with a bevy of weapons and assault-based offenses arising out of the December 22, 2012 incident. (Gov't's Br. at 3.) The defendants moved to suppress the evidence of the search on the grounds that the warrantless search violated the federal and state constitutions.

Following a suppression hearing on March 14, 2014, the state court found the December 22, 2012 search unlawful under the State of New Jersey's jurisprudence concerning protective searches and the automobile exception, because the defendants' detained status at the time of search deprived the circumstances of the exigency required for a warrantless search under New Jersey law pursuant to State v. Pena-Flores, 108 N.J. 6 (2009). (See Attach. A [Docket Item 28-1], 17:5-26:8.) The state court, accordingly, granted the defendants' motion to suppress the evidence obtained in connection with the December 22, 2012 search.[3] (See Ex. E to Def.'s Br. [Docket Item 25-6].)

---

[3] As an initial matter, the Court notes that the state court's suppression of the evidence obtained in connection with the

On August 13, 2014, a federal Grand Jury returned the Indictment in this federal prosecution for possession of a firearm by a convicted felon on June 7, 2012, [Docket Item 17], and the pending motion followed. [Docket Item 25.]

## IV.   STANDARD OF REVIEW

The Fourth Amendment prohibits "unreasonable searches and seizures" of "persons, houses, papers, and effects." U.S. CONST. amend. IV.  Warrantless searches, as here, are therefore presumptively unreasonable, subject to certain specifically established and well-delineated exceptions.  See Horton v. Cal.,

---

December 22, 2012 search does not estop the Government from contesting the pending motion to suppress the same evidence in this federal prosecution.  It is, as asserted by the Government, well-established that state suppression of evidence does not bar the introduction of such evidence in connection with a federal prosecution.  (See Gov't's Br. at 7 (citing U.S. v. Davis, 906 F.2d 829, 832 (2d Cir. 1990)).)  Indeed, "'collateral estoppel never bars the United States from using evidence previously suppressed in a state proceeding in which the United States was not a party.'"  U.S. v. McCoy, 824 F. Supp. 467, 469 (D. Del. 1993) (citations omitted).  Rather, when, in the course of a federal prosecution, a defendant moves to suppress evidence on Fourth Amendment grounds, the federal courts "must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out."  Elkins v. U.S., 364 U.S. 206, 224 (1960).  Here, this rationale is further strengthened by the fact that the state court suppression hinged upon a state-specific warrantless search prerequisite not required under federal law: a showing of exigent circumstances under State v. Pena-Flores, 108 N.J. 6 (N.J. 2009).  Consequently, in the context of the pending motion arising only under federal law, the Court need not credit the state court suppression, aside from the parties' reliance upon the testimony elicited during the state court suppression hearing for the purposes of the pending motion.

496 U.S. 128, 133 (1990).  Consequently, in the context of a motion to suppress evidence obtained in connection with such a search, the Government bears the burden to prove by a preponderance of the evidence that the disputed search falls within one of the recognized exceptions to the warrant requirement.  U.S. v. Herrold, 962 F.2d 1131, 1137 (3d Cir. 1992).  Any evidence obtained in connection with an unauthorized search must, however, be suppressed as "fruit of the poisonous tree." U.S. v. Brown, 448 F.3d 239, 244 (3d Cir. 2006) (citing Wong Sun v. U.S., 371 U.S. 471, 487–88 (1963)).

## V.  DISCUSSION

### A.  Defendant's Federal Prosecution Does Not Violate the Fifth Amendment

As an initial matter, the Court addresses Defendant's threshold position that an exception to the dual sovereignty doctrine precludes this federal prosecution because it follows an earlier state prosecution.

The double jeopardy clause of the Fifth Amendment guarantees that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V; U.S. v. Merlino, 310 F.3d 137, 141 (3d Cir. 2002) (citing Brown v. Ohio, 432 U.S. 161, 165 (1977)). "Importantly, however, there are limits to the reach of the protection afforded by this language."  U.S. v. Piekarsky, 687 F.3d 134, 149 (3d Cir. 2012).

Indeed, under the doctrine of dual sovereignty, dual
federal and state prosecutions do not, standing alone, represent
a violation of the Fifth Amendment's proscription against double
jeopardy.  Id. (citing U.S. v. Gricco, 277 F.3d 339, 352 (3d
Cir. 2002) (citing Abbate v. U.S., 359 U.S. 187, 194 (1959);
Bartkus v. Ill., 359 U.S. 121, 137 (1959); U.S. v. Lanza, 260
U.S. 377, 382 (1922))); U.S. v. Berry, 164 F.3d 844, 846 (3d
Cir. 1999).  The doctrine, articulated by the Supreme Court in
Bartkus v. Illinois and Abbate v. United States, specifically
recognizes that the state and the federal governments act as
"separate sovereigns, with distinct interests in criminalizing
and prosecuting certain conduct."  Id.  The separate sovereigns
may therefore pursue separate and parallel prosecutions, without
regard to the circumstances of the other.  See Berry, 164 F.3d
at 846.

Defendant, however, urges the Court to adopt and apply an
exception to the dual sovereignty doctrine alluded to by the
Supreme Court in Bartkus.  (See generally Def.'s Br. 3-4.)  In
Bartkus, the Supreme Court found successive state and federal
prosecutions constitutionally permissible, but noted that
successive prosecutions might run afoul of the general rule if
one authority acts as a surrogate for the other, or if the state
prosecution serves merely as "a sham and a cover for the federal
prosecution."  Id. at 123.  In such a scenario, the Bartkus

9

Court opined that a successive prosecution may prove
constitutionally impermissible if it renders the earlier state
prosecution, in essence, "another federal prosecution," thereby
enabling federal authorities to "avoid[] the prohibition of the
Fifth Amendment against a retrial of a federal prosecution after
an acquittal." Id. at 123-24.

Though the Court of Appeals for the Third Circuit has
"recognized the potential existence" of a Bartkus exception, it
has "never applied the exception to overturn a second state or
federal prosecution." Berry, 164 F.3d at 847, n.3 (noting that
at least one circuit has questioned whether the Supreme Court
"even intended to create an exception in Bartkus") (citation
omitted); see also Piekarsky, 687 F.3d at 149 (same).

Consequently, to the extent the Bartkus exception narrowly
applies in this Circuit, see U.S. v. Atl. States Cast Iron Pipe
Co., No. 03-852, 2005 WL 2138701, at *4 (D.N.J. Aug. 31, 2005),
it is limited to situations in which one sovereign so thoroughly
dominates or manipulates the prosecutorial machinery of another
that the latter retains little or no volition.  See U.S. v.
Dowdell, 595 F.3d 50, 63 (1st Cir. 2010) (internal citations and
quotation marks omitted); U.S. v. Guzman, 85 F.3d 823, 827 (2d
Cir. 1996).  In that regard, the "essential element of the
Bartkus exception is a high level of control: one sovereign must
(1) have the ability to control the prosecution of the other and

10

(2) it must exert this control to essentially manipulate[ ] another sovereign into prosecuting." U.S. v. Moore, 370 F. App'x 559, 561 (5th Cir. 2010) (citations and internal quotation marks omitted).

Here, Defendant's position concerning the dual sovereignty doctrine rests upon two, largely unsupported allegations. First, Defendant argues that this federal prosecution constitutes "a determined effort to use the combined resources of the federal and state governments to pressure" Defendant and "to use the federal court to obtain a second bite at the apple" following state suppression. (Def.'s Br. at 3.) Second, Defendant points to the undisputed fact that, in connection with plea discussions, federal and state authorities have considered a "global resolution" of all pending charges. (Defs.' Br. at 3.) Defendant argues that these assertions, taken together, indicate an impermissible degree of entanglement between federal and state authorities. The Court, however, finds Defendant's position without merit.

Notably, though the federal and state authorities appear to have been cooperative in conducting their respective investigations, and even entertained the prospect of a global plea with respect to all charges, Defendant has failed to produce any evidence, beyond mere supposition, that the state authorities acted as mere "puppets or surrogates" for the

11

federal authorities involved in this action.  Piekarsky, 687
F.3d at 149.  Government counsel has further proffered that the
AUSA handling this prosecution was unaware of the state
suppression hearing before it was held in the state case on
March 14, 2014, so there could be no collusion in the federal
government directing how the suppression issue was handled by
the state prosecutors.  Indeed, Defendant has not demonstrated
any impermissible collusion between the respective sovereigns,
or any facts to suggest that the state prosecution occurred at
the behest of federal authorities.  See Berry, 164 F.3d at 847
(finding no evidence to indicate federal control over state
actions); U.S. v. Vanhoesen, 366 F. App'x 264, 267 (2d Cir.
2010) (finding no indication that the federal and state
authorities "impermissibly colluding in a manner that
establishes an exception to the dual sovereignty doctrine").
Nor has Defendant proffered any evidence to indicate that the
federal prosecutor manipulated the state prosecutor or exerted a
high level of control over the conduct of the state prosecution.
Rather, in arguing surrogacy, Defendant points to historical
generalities concerning federal adoption of certain prosecutions
and the unrelated deputizing of state prosecutors.  These
assertions, however, fail to suggest that the state prosecution
in this instance acted as a mere conduit for federal
authorities.  To the contrary, the record only reflects that the

12

state and federal prosecutions proceeded independently, subject only to some level of incidental cooperation between the separate sovereigns.

Cooperation, however, even "very close coordination," fails to "amount[] to one government being the other's 'tool' or providing a 'sham' or 'cover.'" U.S. v. Figueroa-Soto, 938 F.2d 1015, 1020 (9th Cir. 1991) (citation omitted). Indeed, "cooperation between federal and state authorities in criminal law enforcement is to be desired and encouraged," Bartkus, 359 U.S. at 169, and does not alone "furnish a legally adequate basis for invoking the Bartkus exception." Dowdell, 595 F.3d at 63; see also U.S. v. Djoumessi, 538 F.3d 547, 550 (6th Cir. 2008) (noting that "everyday" cooperation "does not establish that the federal government has ceded its prosecutorial discretion and other law-enforcement powers to a State"); U.S. v. Zone, 403 F.3d 1101, 1105 (9th Cir. 2005) (noting that collaboration between state and federal authorities "fails to state a colorable double jeopardy claim").

Nor does the prospect of a global plea deal compel the conclusion that federal prosecutors or law enforcement exerted undue control or influence over the state prosecution. Notably, Defendant cites no authority for the proposition that such involvement necessarily infers impermissible collusion between the separate sovereigns. Moreover, the two cases that have

13

considered federal involvement in state plea negotiations, U.S. v. Mardis, 600 F.3d 693, 698 (6th Cir. 2010) and U.S. v. Bigi, No. 09-153, 2011 WL 3207122, at *3 (S.D. Ohio July 27, 2011), both rejected such involvement as a basis to invoke the Bartkus exception.

For all of these reasons, the Court finds Defendants' arguments concerning the dual sovereignty doctrine without merit, and turns to whether the December 22, 2012 search violated the Fourth Amendment.

**B.   Fourth Amendment**

As stated above, the Fourth Amendment prohibits "unreasonable searches and seizures," U.S. Const. amend. IV, and generally deems warrantless searches presumptively unreasonable. Horton v. California, 496 U.S. 128, 133 (1990).  In Terry v. Ohio, 392 U.S. 1 (1968), however, the Supreme Court concluded that "police can stop and briefly detain a person for investigative purposes" based upon "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" and even in the absence of probable cause.  U.S. v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). The propositions articulated by Terry have, in turn, been extended into the context of traffic stops.  See, e.g., Michigan v. Long, 463 U.S. 1032, 1050 (1983).

Consequently, in connection with such stops, police officers may order the driver and passengers out of a lawfully stopped car.[4]  See U.S. v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004) (citations omitted).   In addition, the officers may conduct a search for weapons by patting-down the driver and/or occupants of the stopped vehicle. U.S. v. Moorefield, 11 F.3d 10, 13-14 (3d Cir. 1997) (citing Long, 463 U.S. at 1050). Relevant here, however, are the so-called "protective sweep" and automobile exceptions to the warrant requirement.  (See generally Defs.' Br.; Gov't's Opp'n.)  The Court shall address each exception in turn.

### 1. The December 22, 2012 Search Was Not Justified as a Protective Sweep

In connection with lawful traffic stops, it is well established that police officers may, under certain circumstances, conduct a protective, security sweep of the

---

[4] A lawful Terry investigation requires, in the first instance, that the officers conducted such investigation in connection with "a lawful" traffic stop.  Arizona v. Johnson, 555 U.S. 323, 327 (2009) ("[I]n a traffic-stop setting, the first Terry condition-a lawful investigatory stop-is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation.").  Here, the parties conceded the lawfulness of the December 22, 2012 traffic stop on the oral argument record on December 10, 2014.  See also U.S. v. Moorefield, 11 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of state traffic regulations.") (citation omitted).  Consequently, in connection with the pending motion, the Court need only consider whether the circumstances at the time of the search authorized a warrantless search of the Impala.

vehicle's passenger compartment.  Long, 463 U.S. at 1049-50
(finding that Terry permits a protective search of a vehicle's
passenger compartment during a lawful investigatory stop).
Indeed, the Supreme Court found such exception particularly
justified in light of the unique safety concerns that arise in
connection with traffic stops, namely, the risk that a suspect
"not placed under arrest, [] will be permitted to reenter his
automobile, and [] will then have access to any weapon inside."
Id.  The Supreme Court stressed, however, that a permissible
protective sweep "involves a police investigation 'at close
range,' when the officer remains particularly vulnerable in part
because a full custodial arrest has not been effected, and the
officer must make a 'quick' decision as to how to protect
himself and others from possible danger."  Id. at 1051-52
(internal citations omitted).

    The exception therefore only applies in a narrow set of
circumstances, where "the police officer possesses a reasonable
belief based on specific and articulable facts which" reasonably
warrants "the officer in believing that the suspect is dangerous
and [][] may gain immediate control of weapons."
Maryland v. Buie, 494 U.S. 325, 332 (1990) (citations and
internal quotation marks omitted)).  Consequently, in evaluating
the propriety of a protective search, the Court considers
whether a reasonably prudent officer would, under the totality

of the circumstances, believe that the driver and/or occupants presented an immediate danger.  U.S. v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (citation omitted); U.S. v. Edwards, 53 F.3d 616, 618 (3d Cir. 1995) ("The sole justification of the search in [a Terry stop] is the protection of the police officer and others nearby, and it must therefore be confined to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.").  In that regard, the Court finds Arizona v. Gant, 556 U.S. 332 (2009), instructive.

In Gant, officers arrested Rodney Gant on suspicion of narcotics distribution shortly after he exited his vehicle on August 25, 1999.  Id. at 335-36.  The officers thereafter handcuffed Mr. Gant and placed him in the back of a patrol car.  Id. at 336.  Subsequent to Mr. Gant's arrest, "two officers searched his car: [o]ne of them found a gun, and the other discovered a bag of cocaine in the pocket of a jacket on the backseat."  Id.  The evidence obtained in connection with the search, in turn, resulted in Mr. Gant being charged with two offenses: possession of a narcotic drug for sale and possession of paraphernalia (i.e., the plastic bag in which the officers located the recovered cocaine).  Id.

In considering the constitutionality of the search, the Supreme Court concluded that police officers may only conduct a

17

protective sweep of a vehicle when faced with a reasonable possibility that the suspect might gain access to the vehicle at the time of the search. Id. at 343-44. In that regard, the Court noted that authority to conduct such a sweep principally hinges upon whether the suspect remains within "reaching distance" of the car. Id. at 343-44. In so holding, the Court rejected any interpretation of its prior precedent as permitting a vehicle search in the absence of a reasonable possibility of such access. Id. at 343, 351 (citing N.Y. v. Belton, 453 U.S. 454 (1981)). In considering the specific search in Gant, the Court therefore found concerns for officer safety insufficient to justify the warrantless search, because Mr. Gant had, at the time of the search, been arrested and secured in the back of a patrol car. Id. at 344. The Court, accordingly, found the search unreasonable and violative of the Fourth Amendment. Id.

Here, as in Gant, Defendant and the other occupant of the vehicle had, at the time of vehicle search, been detained and secured in the back of patrol cars. (See Attach. B at 20:1-13, 70:8-14.) Indeed, Officer Truitt, the officer who initiated the traffic stop, specifically testified in the state suppression hearing that she immediately placed Defendant in handcuffs and in the back of her control car, and confirmed that Defendant therefore presented no threat. (Id. at 13:2-10, 20:1-15, 25:2-4.) Officer Beltran, the officer who conducted the search,

18

similarly testified that Defendant and the passenger, Assan
Perry, had been "cuffed" and "detained" in separate police
vehicles under the supervision of separate officers. (Id. at
66:8-20, 69:3-23, 84:1-18.)  Officer Beltran further confirmed
that both individuals had no access to the vehicle, and posed no
threat at the time of the search. (Id.)  In addition, the
record appears to reflect that Officer Truitt drove away with
Defendant in the back of her patrol car prior to Officer
Beltran's search. (Id. at 27:9-12.)  Officer Beltran, however,
found a sweep of the vehicle necessary, in order to "mak[e] sure
that the scene was safe," and to ensure that the individuals, if
released, could not "access" a weapon and/or "hurt one of the
officers." (Id. at 65:24-66:7, 86:24-87:6.)

        Despite Officer Beltran's assertions, the Court finds that
he could not reasonably have believed that Defendant and/or
Assan Perry could have accessed the vehicle at the time of the
search.  Importantly, at the time of the search, officers had
detained, handcuffed, and secured Defendant and Assan Perry in
separate patrol cars, guarded by separate officers.  Nor does it
appear that Officer Beltran anticipated, at the time of the
search, that either Defendant or Assan Perry would be released
from the patrol cars at the scene of the traffic stop.

        The individuals' seemingly indefinite detention therefore
mitigated any safety concerns that might otherwise have

justified a protective search in this instance.  Indeed, given the circumstances, no opportunity existed for either individual to reasonably gain access to the vehicle at the time of the search.  And, Officer Beltran conceded that the individuals lacked access to the Impala at the time of the search, and therefore posed no threat.  The Court therefore finds, under the facts presented, that Officer Beltran lacked a sufficient basis to conduct a protective sweep of the Impala.  See Gant, 556 U.S. at 343-44.  Consequently, the Court rejects the Government's argument concerning the protective sweep exception to the warrant requirement, and turns to the automobile exception.

### C.   The December 22, 2012 Search Was Justified under the Automobile Exception to the Warrant Requirement

As an initial matter, the Court addresses the distinguishing features of: (1) the search incident to arrest exception and (2) the automobile exception.

Notably, the search incident to arrest exception permits vehicle searches only "if it is 'reasonable to believe [that] evidence relevant to the crime of arrest might be found.'"  U.S. v. Donahue, 764 F.3d 293, 300 n.6 (3d Cir. 2014) (quoting Gant, 556 U.S. at 335).  In that regard, the exception requires "a lesser basis for a search than a showing of probable cause," but authorizes searches only for evidence related to the crime prompting the arrest, not to evidence of other offenses.  Id.

(citations omitted).  The automobile exception, by contrast, permits "'the search of every part of the vehicle and its contents that may conceal the object of the search.'" provided that probable cause supports such search.  Id. at 300 (citation omitted).  The validity of a search pursuant to the automobile exception therefore depends upon whether the officers had probable cause to believe that the seized vehicle contained at the time of the search evidence of a crime.  Id. at 301.  Here, the record is unclear concerning the precise offense for which officers detained Defendant and Assan Perry at the time of the search.  However, because the Court finds, as stated below, that a fair probability existed that the December 22, 2012 search would result in the recovery of evidence of a crime, the Court need not address the search-incident-to-arrest exception.

Rather, in accordance with the automobile exception, the Court must consider "'the events which occurred leading up to the'" search, and then must decide "'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause.'"  Id. (quoting Ornelas v. U.S., 517 U.S. 690, 696 (1996)).  Such an inquiry, however, deals, in essence, "'with probabilities,'" for if a "'fair probability'" exists that evidence of a crime would have been found, then probable cause justifies the search.  Id. (quoting Ill. v. Gates, 462 U.S. 213, 231, 238 (1983)); see also

21

U.S. v. Burton, 288 F.3d 91, 101 (3d Cir. 2002) (("The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'") (citation omitted).  The automobile exception is only an exception to the Fourth Amendment's warrant requirement, and not to its probable cause requirement.

Here, Officer Beltran testified to knowledge of the following facts at the time of, and immediately prior to, the search.  First, he stated that "a call went out" over the police radio concerning shots being fired near the Auto Zone in Camden. (Attach. B at 83:10-21.)  Immediately thereafter, Officer Beltran heard Officer Truitt call out over the radio that "an Impala [] came out of that" area, and "almost struck" Officer Truitt's vehicle.  (Id.)  Upon arrival at the scene of the traffic stop, Office Beltran observed Officer Truitt running "up to the car" and removing Defendant from the vehicle "at gunpoint."  (Id. at 84:1-2.)  Officer Beltran then removed Assan Perry from the vehicle, at which time he observed multiple "shell casings" fall to the ground from Assan Perry's person. (Id. at 42:3-12.)

Given these facts, the Court finds that an objectively reasonable officer would be justified in concluding that the vehicle contained evidence of a number of firearm-based crimes

including, possession of weapons for unlawful purposes, see
N.J.S.A. §§ 2C:39-4, -5, or unlawful discharge or carrying of a
firearm within the boundaries of the City of Camden.  See CAMDEN,
N.J., CODE §§ 235-1, -3, -4.  Notably, even if it remained
unclear at the time of the search whether the occupants of the
vehicle had any direct involvement in the shots reported by
radio, Officer Beltran knew that the vehicle nearly struck
Officer Truitt's patrol car as the vehicle left the vicinity of
the shots fired at high speed.  There can be other explanations
for why a vehicle would leave the vicinity of gunshots at high
speed, but the prospect that the vehicle contained perpetrators
of the gunshots is quite logical. Officer Beltran then observed
shell casings fall from Assan Perry as Officers removed Mr.
Perry from the vehicle.  The presence of shell casings falling
from the person of passenger Assan Perry as he emerged from the
vehicle strongly and logically suggested the recent discharge of
a firearm and the presence of a firearm in vehicle.  Likewise,
it is logical that if some shell casings fell from Perry as he
was removed from the vehicle, that other shell casings could be
present in the vehicle and likewise be evidence of unlawful
discharge, or other crimes.  These facts, taken together,
clearly demonstrate a fair probability that a search of the
vehicle would lead to the recovery of evidence of a crime.  See
Donahue, 764 F.3d at 301-03 (finding an search of a fugitive

defendant's vehicle lawful in light of the officer's statement that, in his experience, fugitives often place false identification documents in readily available locations, like cars); U.S. v. Burton, 288 F.3d 91, 101 (3d Cir. 2002) (finding an automobile search lawful based upon officers' observation of defendant carrying a bag to defendant's vehicle from a building known for drug activity).  The Court therefore finds the December 22, 2012 search justified by probable cause and, accordingly, authorized under the automobile exception to the warrant requirement.

## VI.  CONCLUSION

For all of these reasons, Defendant's motion to suppress will be denied on the ground that the December 22, 2012 search falls within the automobile exception to the warrant requirement.  The automobile search was lawful and the evidence recovered in the search is not inadmissible on this ground.[5]

---

[5] The Court determines only that the suppression motion should be denied.  The Government has argued for admissibility of the firearm and secret compartment as admissible evidence that is permitted by Rule 404(b), Fed. R. Ev., as probative of Terron Perry's possession of a firearm in the June 7, 2012 shooting at AutoZone and the reason the weapon wasn't detected in the ensuing vehicle search. Defendant's motion does not argue this ground, nor did either party raise it at oral argument, so this Court does not reach the overall issue of admissibility at this time under Rules 404(b) and 403, Fed. R. Ev.

An accompanying Order will be entered.


**January 9, 2015**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge